UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 23-65 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| L'MYKAL HICKS | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a motion to dismiss, filed by the Defendant, L'Mykal Hicks ("Hicks"). Record Document 22. The Defendant moves to dismiss the indictment pending against him, which charges him with illegal possession of a machinegun, in violation of 18 U.S.C. § 922(o) (count one) and possession of a firearm not registered to the Defendant in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) (count two). The Government has filed an opposition to the motion. For the reasons below, the motion is **DENIED**.

I.   Legal Standard.

Before trial, a criminal defendant may file a motion asserting that an indictment is defective because of a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words

1

of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id.* (internal marks omitted). In considering a motion to dismiss an indictment, the Court must take the facts as set forth in the indictment as true. *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004); *see also United States v. Radley*, 632 F.3d 177, 180 (5th Cir. 2011) ("The allegations in the indictment are presumed true for present purposes.").

II.   Relevant Statutes.

With some exceptions, § 922(o) provides that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o). This is the violation charged in count one of the indictment.

The second offense charged in the indictment is an alleged registration violation. The National Firearms Act ("NFA"), passed by Congress in 1934 as a tax provision, regulates the possession and transfer of certain types of statutorily-defined "firearms" and requires these firearms to be registered in the National Firearms Registration and Transfer Record ("NFRTR"). 26 U.S.C. § 5801, et. seq.; *Staples v. United States*, 511 U.S. 600 (1994). It is unlawful for anyone "to receive or possess a firearm which is not registered to him" in the NFRTR. 26 U.S.C. § 5861(d). The NFA's definition of firearm encompasses only specific categories of dangerous weapons, including, among other items, machineguns, short-barreled shotguns and rifles, and silencers. 26 U.S.C. § 5845. If a person wishes to lawfully possess one of these firearms, he must register the firearm with the NFRTR; those who fail to do so face criminal penalties.

III.  Law and Analysis.

Here, the Defendant's motion to dismiss presents two arguments. First, he argues that the NFA's registration requirements are unconstitutional and infringe on his Second Amendment rights. Second and relatedly, he submits that the registration and ban on possession of a machinegun violate his Second Amendment rights as understood under the recent Supreme Court case of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). The Government opposes the motion to dismiss, arguing that machineguns are not covered by the plain text of the Second Amendment and that even if such possession were arguably protected, a ban on machineguns comports with history and tradition such that it passes scrutiny under *Bruen*. The Court will address the Defendant's arguments in turn.

A.  The NFA's Regulations.

Hicks concedes that the NFA was commenced as a taxation measure. Indeed, the "NFA was designed to target 'gangster-type weapons' that are 'especially dangerous and unusual.'" *Mock v. Garland*, 75 F.4th 563, 567 (5th Cir. 2023). As the Fifth Circuit has recently explained, because of this historical aim, "NFA 'firearms' are extensively regulated." *Id.* The impetus behind the NFA was "panic over gangster-related violence," and so the measure was designed to "regulate 'weapons likely to be used for criminal purposes.'" *Id.* at 570 (citing *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992)). The Attorney General at the time of the NFA's passage testified,

> A machine gun, of course, ought never to be in the hands of any private individual. There is not the slightest excuse for it, not the least in the world, and we must, if we are going to be successful in this effort to suppress crime in America, take these machine guns out of the hands of the criminal class.

3

*Id.* (quoting *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. 6 (1934)). At the time, law enforcement did not actually anticipate that criminals would comply with the registration requirements, but rather the NFA gave prosecutors a tool in the charging arsenal. *See id*.

According to Hicks, "that paradigm changed" when Congress enacted the Firearm Owner Protection Act, which banned the transfer or possession of a machinegun that was not registered as of May 1986. Since then, Hicks argues, the ATF has refused to allow registrations of machineguns, and therefore, with no further taxation component, there is no constitutional justification for § 5861(d)'s ban on machineguns. That argument, however, has been foreclosed by the Fifth Circuit in *United States v. Ardoin*, 19 F.3d 177 (5th Cir. 1994) and *United States v. Gresham*, 118 F.3d 258 (5th Cir. 1997). Indeed, the Fifth Circuit has explained that "prosecutions under § 5861(d) are constitutional, despite the fact that it is legally impossible to register machineguns in the wake of § 922(o)." *Gresham*, 118 F.3d at 262. Thus, this basis for dismissal fails.

  B. The Second Amendment.

The Court now turns to Hicks's second argument. He contends that under *Bruen*, the registration requirement and the ban on machinegun possession are unconstitutional under the Second Amendment. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has examined the scope of the Second Amendment and the permissible limitations thereon on several occasions. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Court confronted a

4

law which banned handgun possession in the home.  After conducting a thorough textual and historical analysis of the scope of the Second Amendment, the Court concluded that it codified an individual preexisting "right to keep and bear arms."  *Id.* at 591-92.  The *Heller* Court struck down the District of Columbia law, which implemented a total ban on the possession of a handgun in the home, based on the Second Amendment's guarantee of the right to bear arms.  *Id.* at 635.  However, the Court was quick to caution that the Second Amendment right to keep and bear arms was "not unlimited" and that certain restrictions on that right were permissible and in keeping with history and tradition.  *Id.* at 595, 626-27.

More recently, in *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court reexamined the Second Amendment's right to keep and bear arms.  *Bruen*, 142 S. Ct. 2111.  There, the Court addressed the constitutionality of a New York licensing scheme which allowed officials to deny concealed-carry permits even though an applicant had satisfied the permit's threshold criteria.  In *Bruen*, the Court set forth the proper framework to analyze Second Amendment challenges:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

*Bruen* explained that "[w]hen confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy"

which "requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* at 2132. To establish the challenged regulation is "consistent with this Nation's historical tradition," the government must "identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 2133. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* (internal marks omitted).

The first step of the *Bruen* inquiry is to determine whether the Second Amendment covers the Defendant's conduct. This question, in itself, includes three subparts. *See United States v. Shephard*, 2024 WL 71724 (S.D. Miss. Jan. 5, 2024). The Court must first determine whether Hicks is part of "the people" protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2134. Second, it must determine if the weapon at issue is "in common use today for self-defense." *Id.* Lastly, the Court must determine whether the Second Amendment protects the "proposed course of conduct." *Id.*

Because the first step of *Bruen* poses a threshold inquiry, if the Court finds that Hicks cannot satisfy this first step, then the inquiry ends there and the Court need not determine the second step, which is whether the regulation is consistent with history and tradition. In this particular matter, the Court finds that Hicks cannot satisfy the first step of *Bruen*, as discussed below.

1. The People.

Hicks first argues that he is one of "the people" protected by the Second Amendment. The Government does not dispute this. The Court finds that both *Heller* and *Bruen* included the qualifier "law-abiding" for those who enjoy the protection of the Second Amendment. *See Heller*, 554 U.S. at 635 (holding the Second Amendment confers the "right of law-abiding, responsible citizens to use arms in defense of hearth and home"); *Bruen*, 142 S. Ct. at 2134 (explaining that petitioners were "two ordinary, law-abiding, adult citizens" protected as "people" by the Second Amendment). The Court has been presented with no evidence or argument to suggest that Hicks does not meet the definition of "the people," and therefore the Court accepts the parties' positions on this prong.

2. Common Use of the Weapon.

*Bruen* next asks whether the weapon—here, a machinegun—is in common use today for self-defense.[1] *See Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (explaining that "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes *today*." (emphasis in original)). The Government avers that pursuant to Supreme Court precedent, a machinegun is not eligible for Second Amendment protection. That is, under *Heller*, a machinegun is not protected because it was "not in common use at the time" and is not "typically possessed by law-abiding citizens for lawful purposes." Record Document 25, p. 5.

---

[1] The Supreme Court has long held that "individual self-defense is 'the central component' of the Second Amendment right." *Bruen*, 142 S. Ct. at 2133 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)).

The Court notes that the Supreme Court has clarified that courts must not only consider weapons in existence at the time of the founding, but instead, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Caetano*, 577 U.S. at 411 (quoting *Heller*, 554 U.S. at 582). Concurring in *Caetano,* Justice Alito explained that the Second Amendment's protection of weapons "in common use at the time" is a "reflect[ion of] the reality that the founding-era militia consisted of citizens 'who would bring the sorts of lawful weapons that they possessed at home to militia duty,' and that the Second Amendment accordingly guarantees the right to carry weapons 'typically possessed by law-abiding citizens for lawful purposes.'" *Id.* at 416 (Alito, J., concurring).[2] Confirming that proposition, the *Bruen* Court stated that the Second Amendment's "reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century.'" *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582). Thus, the Court will examine whether the machinegun is in common use today for a lawful purpose.

Unfortunately, the defense's motion to dismiss does not address the issue of whether a machinegun is in common use today as a weapon of self-defense. Instead, in its reply memorandum, the defense merely focuses on whether the machinegun *existed* at the time of the nation's founding:

> Our own research reflects that the machinegun was invented in 1718 by James Puckle and was called a 'Puckle gun.' One is on display in the Tower

---

[2] *See also Heller*, 554 U.S. at 624–25 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense. 'In the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same.'" (quoting *State v. Kessler*, 614 P.2d 94, 98 (1980)).

8

>of London.  They were in common use on British ships and in the field.  As a result, it seems to this writer that machineguns were in existence at the time of the adoption of the Second Amendment . . . .

Record Document 26, p. 1.  This is not only superficial, but also it fails to consider whether the machinegun is in common use today for lawful purposes.

In this case, after a review of binding and persuasive jurisprudence, the Court concludes that a machinegun is not in common use for a lawful purpose such as self-defense, unlike the handguns at issue in *Heller* and *Bruen*.  The Defendant has not persuasively demonstrated, much less even argued, that a machinegun is in common use today.  Nor, importantly, does he dispute the tenet that dangerous and unusual weapons are not afforded protection under the Second Amendment.  *See Mock*, 75 F.4th at 596 (Higginson, J., dissenting) ("the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes" because "there is a historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.' . . . [T]he Supreme Court's more recent decision in *Bruen* left *Heller*'s dangerous-and-unusual carveout intact.").  Rather, Hicks merely contends that the machinegun is protected under the Second Amendment because of the *Bruen* opinion.  The Court disagrees with this unduly broad proposition.

Through the years, the Supreme Court has remained steadfast in its holding that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626.  It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*  Rather, the "sorts of weapons protected" by the Second Amendment are those in common use for a lawful purpose like self-defense.

9

*Id.* at 627. Outside of this category, a firearm does not receive Second Amendment protection. A prohibition against carrying "dangerous and unusual weapons" is, according to the Supreme Court, supported by history and tradition. *Id*. To be sure, in *Heller*, the Supreme Court announced, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right . . . ." *Id.* at 625. And, as recently as 2022, the Supreme Court has confirmed that dangerous and unusual weapons are not protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2143.

Hicks argues the machinegun is protected under the Second Amendment. In addition to the foregoing analysis which dispels this notion, the Court has also found the Defendant's position is foreclosed by both Supreme Court and Fifth Circuit precedent. First, as to the Supreme Court, *Heller* explicitly rejected a reading of prior Second Amendment jurisprudence that would have rendered the NFA's restrictions on machineguns unconstitutional. *Heller*, 554 U.S. at 624. With respect to the Fifth Circuit, it held in *Hollis v. Lynch* that "[m]achineguns are dangerous and unusual and therefore not in common use. They do not receive Second Amendment protection . . . ." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016). Similarly, in prior Fifth Circuit cases, the court has remarked that machineguns are "inherently dangerous," *United States v. Golding*, 332 F.3d 838, 840 (5th Cir. 2003), and are unprotected because they are "primarily weapons of war [with] no appropriate sporting use or use for personal protection," *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999).

10

The Court finds no evidence that machineguns are in common use today for lawful purposes, or that they are no longer dangerous and unusual. Indeed, the jurisprudence clearly compels the opposite conclusion—that machineguns are still firmly within the category of dangerous and unusual weapons that do not receive Second Amendment protection.

III. Conclusion.

For the foregoing reasons, Hicks has failed to establish that machineguns receive Second Amendment protection or that the registration requirements related thereto are unconstitutional. Accordingly, Hicks's motion to dismiss [Record Document 22] is **DENIED**.

**THUS DONE AND SIGNED** this __25th__ day of April, 2024.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE